IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

|  |  |  |
|---|---|---|
| GARY L. STOLINSKI, | : | HON. JEROME B. SIMANDLE |
| Plaintiff, | : | Civil No. 07-3174 (JBS) |
| v. | : |  |
| JAY PENNYPACKER, et al., | : | **OPINION** |
| Defendants. | : |  |

---

APPEARANCES:

Kevin P. McCann, Esq.
Shirley Ann Naylor, Esq.
CHANCE & McCANN
201 W. Commerce St.
P.O. Box 278
Bridgeton, NJ 08302
    Attorneys for Plaintiff Gary L. Stolinski

Tamara L. Rudow, Deputy Attorney General
OFFICE OF THE NJ ATTORNEY GENERAL
Division of Law
RJ Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, NJ 08625-0112
    Attorney for Defendants Jay Pennypacker, Daniel K. Hurley,
    B. Koshland, William Rudderow, New Jersey State Police
    Office of Professional Standards, and State of New Jersey

**SIMANDLE**, District Judge:

## I.    INTRODUCTION

Plaintiff Gary L. Stolinski is a Sergeant with the New
Jersey State Police.  In 2005, he was indicted on charges of
official misconduct, credit card fraud, and identity theft, which
indictment he alleges was procured by the malicious conduct of

the individual Defendants named herein.  After the charges against Plaintiff were dismissed, he filed this action against the State of New Jersey, the New Jersey State Police Office of Professional Standards (the "OPS"), and four individual state police officers, alleging that Defendants violated his rights under the United States Constitution and New Jersey law.

Presently before the Court is Defendants' motion to dismiss all claims asserted in the Complaint [Docket Item 21].  For the reasons explained below, the Court will convert this motion into one for summary judgment, as both parties have submitted documents and asked the Court to look beyond the face of the Complaint.  The Court will grant Defendants' motion for summary judgment as to Plaintiff's claims against the State of New Jersey and the OPS, and will grant in part and deny in part the motion as to Plaintiff's claims against Sergeants Pennypacker and Rudderow and Lieutenants Hurley and Koshland (the "Individual Defendants"), as set forth in detail herein.

## II.  BACKGROUND

### A.   Facts

The facts, as they appear from the Complaint and from the documents the parties have submitted during the motion practice on this matter, are as follows.  Plaintiff is a Sergeant with the New Jersey State Police, and held the same position at the time the events underlying this action transpired.  (Compl. ¶ 3.)  The

2

Individual Defendants are employed by the State Police OPS.  (Id. at ¶¶ 4-7.)

Between July 31, 2004 and August 25, 2004, Plaintiff attempted to apply online for an American Express credit card on behalf of a company called "GS Tickets" using his office computer.  (Id. at ¶ 44; Defs.' Br. Ex. 2 at 1.)  In the space on the online application which directs applicants to enter a Social Security Number, Plaintiff inserted the business tax identification number he had lawfully obtained on behalf of GS Tickets.  (Compl. ¶ 44.)

Although the details of the events that transpired following Plaintiff's application are not entirely clear from the Complaint, it appears that the Individual Defendants launched a criminal investigation into Plaintiff's credit card application. (Id. at ¶ 21.)  According to the Complaint, in the face of evidence demonstrating unequivocally that Plaintiff had legitimately used his company's business tax identification number on the application, and without probable cause, the Individual Defendants arrested Plaintiff, accusing him of having committed identity theft and of having applied for the credit card using a false identification.  (Id. at ¶¶ 22, 44.)  After a presentation before a grand jury that included the Individual Defendants' allegedly perjured testimony, (id. at ¶ 50), Plaintiff was indicted on July 15, 2005 on charges of official

misconduct in the second degree, credit card fraud in the fourth degree, and identity theft in the third degree.[1]   (Defs.' Br. Ex. 2 at 1-4.)   In Count Three of the indictment, Plaintiff was charged with having

> obtain[ed] the personal identifying information of . . . persons known to the grand jurors as L.G. and/or T.M., in order to assume the identity of L.G. and/or T.M., or represent himself as L.G. and/or T.M., without the authorization of L.G. and T.M., with the purpose to fraudulently obtain or attempt to obtain . . . American Express credit cards . . .

(Id. at 4.)   Three days after he was indicted, on July 18, 2005, Plaintiff was suspended from work without pay.   (Defs.' Br. Ex. 4 at 6.)   Around this time, the Individual Defendants allegedly made knowingly false statements about Plaintiff "through various news mediums."   (Compl. ¶¶ 17, 62.)

On December 2, 2005, the prosecutor, upon determining that Plaintiff had not, in fact, applied for the credit card using a false identity, moved for the dismissal of the indictment, (Defs.' Br. Ex. 8 at 1), and on December 12, 2005 – nearly five months after Plaintiff was indicted – all charges against him were dismissed.   (Defs.' Br. Ex. 3 at 1.)   Plaintiff was reinstated to his position on January 5, 2006.   (Defs.' Br. Ex. 8

---

[1]   The Complaint further alleges that Defendant Pennypacker deliberately falsified and/or concealed evidence with the knowledge and consent of three other Individual Defendants. (Compl. ¶ 44.)   Whether this alleged falsification and/or concealment took place before or after the presentation to the grand jury is not apparent on the face of the Complaint.

at 1.)  Less than ninety days after the dismissal of the
indictment, on March 9, 2006, Plaintiff submitted to the New
Jersey Department of Law and Public Safety a tort claims notice
form describing the indictment, its dismissal, and his ultimate
reinstatement with the police force.  (Id.)  In the form,
Plaintiff stated that the "indictment received statewide and
regional media coverage and has caused the claimant embarrassment
and damaged his reputation," and that he had experienced "pain,
suffering and humiliation," as well as permanent "[l]oss of
[e]steem."  (Id. at 1-2.)  Plaintiff also informed the State that
he sought back pay for the period of suspension as a result of
the dismissal of the criminal charges.[2]  (Id.)

    **B.   Procedural History**

    Plaintiff filed this lawsuit on July 9, 2007, naming
Sergeants Pennypacker and Rudderow, Lieutenants Hurley and
Koshland,[3] the State of New Jersey and the OPS as Defendants.
The Complaint asserts claims of malicious prosecution pursuant to
42 U.S.C. § 1983 (Count I), the New Jersey Constitution (Count

---

    [2]  The State ultimately provided Plaintiff with back pay.
Plaintiff filed suit in state trial court on August 1, 2007,
seeking the reimbursement of the attorney's fees he had incurred
in defending himself against the indictment.  See Stolinski v.
Div. of State Police, No. 2412-07T3, 2008 WL 4703013, at *1 (App.
Div. Oct. 28, 2008.)  The matter was referred to the Appellate
Division, which recently determined that Plaintiff's request was
not cognizable under N.J.S.A. 53:1-30.  Id. at *2.

    [3]  The Individual Defendants herein are sued in their
individual and official capacities.

V), and New Jersey common law (Count VI); defamation pursuant to § 1983 (Count II); false imprisonment under § 1983 (Count III) and New Jersey common law (Count XIV);[4] civil rights conspiracy under §§ 1983 and 1985 (Count IV); "unlawful custom, practice, & policy" under § 1983 (Count VII); "§ 1983 supervisory liability" (Count VIII); malicious abuse of process under § 1983 (Count IX) and New Jersey common law (Count X); invasion of privacy (Count XI); false light (Count XII); negligence (Count XIII); and respondeat superior liability (Count XV).

The Defendants subsequently sought leave to file an over-length brief, which the Court granted in its April 21, 2008 Order [Docket Item 22].[5]  Thereafter, Defendants filed the motion to dismiss presently under consideration [Docket Item 21].  Both in the Defendants' motion to dismiss and in Plaintiff's opposition thereto, the parties submitted various documents and asked the Court to consider matters beyond the face of the Complaint.  In a

_____

[4]  The Complaint contains two claims listed as Count X.  For purposes of clarity, the Court refers herein to the second Count X through Count XIV as Counts XI through XV.

[5]  While the Court appreciates Defendants' expansive effort to address the "complex and substantial issues of fact and law" in this case, (Rudow Decl. ¶ 4), it should be noted that Defendants' initial sixty-four page submission is encumbered with numerous paragraphs that have little or nothing to do with this case, including arguments addressing claims that Plaintiff did not assert, (Defs.' Br. at 55), and an analysis of an "accident" and a "tax map" that (presumably) are relevant to another matter altogether.  (Id. at 40.)  This brief is gratuitously long and could, with minimal effort, have been edited to fit within the generous forty-page limits provided in Rule 7.2(b), L. Civ. R.

Letter Order dated November 13, 2008 [Docket Item 33], the Court informed the parties that it would convert the motion to dismiss into a motion for summary judgment pursuant to Rule 12(d), Fed. R. Civ. P.[6]

## III. DISCUSSION

### A.   Standard of Review

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Liberty Lobby, 477 U.S. at 250; Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326,

---

[6]   The November 13, 2008 Letter Order afforded the parties an additional ten days to present factual material pertinent to the instant motion beyond the documents already submitted. No such submissions were filed and the summary judgment record is complete.

329-30 (3d Cir. 1995) (citation omitted).

Although entitled to the benefit of all justifiable inferences from the evidence, "the nonmoving party may not, in the face of a showing of a lack of a genuine issue, withstand summary judgment by resting on mere allegations or denials in the pleadings; rather, that party must set forth 'specific facts showing that there is a genuine issue for trial,' else summary judgment, 'if appropriate,' will be entered." United States v. Premises Known as 717 South Woodward Street, Allentown, Pa., 2 F.3d 529, 533 (3d Cir. 1993) (quoting Fed. R. Civ. P. 56(e)) (citations omitted).  As the Supreme Court has explained,

> Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (internal quotations and citations omitted).

**B.    Sovereign Immunity**

As to Plaintiff's section 1983 and 1985 claims, Defendants argue, and the Court agrees, that the State, the OPS, and the Individual Defendants in their official capacities are immune from suit in federal court under the Eleventh Amendment, and that Plaintiff's federal claims against these Defendants must

8

accordingly be dismissed.  As this Court recently explained:

> Under the Eleventh Amendment to the United States
> Constitution, an unconsenting state is immune from suit
> in federal court filed by one of its own citizens,
> irrespective of the type of relief sought.  See Pennhurst
> State Sch. & Hosp. v. Halderman, 465 U.S. 89, 99-100,
> (1984).  It is well-recognized that although the Eleventh
> Amendment refers only to "State[s]," U.S. Const. amend.
> XI, such immunity extends to state agencies like the
> [OPS].  See Regents of the Univ. of California v. Doe,
> 519 U.S. 425, 429 (1997) . . . .  It is, moreover,
> black-letter law that while Congress may abrogate a
> state's sovereign immunity under certain circumstances,
> it did not do so when enacting 42 U.S.C. § 1983 . . . [or
> § 1985.]  See, e.g., Will v. Michigan Dept. of State
> Police, 491 U.S. 58, 64 (1989) (noting that "a State is
> not a person within the meaning of § 1983"); Quern v.
> Jordan, 440 U.S. 332, 345 (1979).

Pappas v. Township of Galloway, 565 F. Supp. 2d 581, 586-87

(D.N.J. 2008) (footnote omitted).

Plaintiff's official-capacity claims against the Individual

Defendants pursuant to sections 1983 and 1985 must likewise be

dismissed.  Such claims, when filed against state employees in

their official capacities, "should be treated as suits against

the State," Hafer v. Melo, 502 U.S. 21, 25 (1991), and are barred

by the Eleventh Amendment.  Pennhurst, 465 U.S. at 101 n.11; see

also Will, 491 U.S. at 71 ("a suit against a state official in

his or her official capacity is not a suit against the official

but rather is a suit against the official's office").  While the

Court may entertain claims for injunctive relief against state

officers in their official capacities, see Pennhurst, 465 U.S. at

101 n.10, there is no claim for injunctive relief in this case.

The Court will accordingly grant Defendants' motion for summary judgment as to the claims asserted in Counts I, II, III, IV, VII, VIII, and IX against the State, the OPS, and the Individual Defendants in their official capacities.

**C.   Tort Claims Act**

1.   <u>Tort Claims Notice</u>

The Court next addresses Defendants' argument that Plaintiff's tort claims based on New Jersey state law must be dismissed on account of Plaintiff's failure to file a timely and adequate notice of tort claim pursuant to New Jersey's Tort Claims Act ("TCA"). As the parties recognize, the TCA "expressly waives [New Jersey's] sovereign immunity as to certain claims." <u>Warnett v. Correctional Medical Services</u>, No. 07-1291, 2008 WL 930739, at *6 (D.N.J. Mar. 31, 2008) (citation omitted). In order to take advantage of the TCA's waiver of sovereign immunity, however, a plaintiff must comply with the Act's notice requirements. <u>See</u> N.J.S.A. 59:8-4, -8. Specifically,

> N.J.S.A. 59:8-8 requires a claimant to give the public entity notice of the claim within ninety days after accrual of the cause of action. The mandated contents of the notice are prescribed by N.J.S.A. 59:8-4, which is designed to provide the public entity with sufficient information to enable it promptly to evaluate its liability and potential exposure and, if it chooses, to correct a defective condition and also to engage in settlement negotiations prior to the commencement of suit.

<u>Newberry v. Township of Pemberton</u>, 319 N.J. Super. 671, 675 (App.

Div. 1999) (citations omitted).[7]  The TCA provides that a
"claimant shall be forever barred from recovering against a
public entity or public employee if . . . [h]e failed to file his
claim with the public entity within 90 days of accrual of his
claim except as otherwise provided in section 59:8-9."[8]  N.J.S.A.

_____

[7]  A tort claims notice must contain the following contents:

a. The name and post office address of the claimant;

b. The post-office address to which the person presenting
the claim desires notices to be sent;

c. The date, place and other circumstances of the
occurrence or transaction which gave rise to the claim
asserted;

d. A general description of the injury, damage or loss
incurred so far as it may be known at the time of
presentation of the claim;

e. The name or names of the public entity, employee or
employees causing the injury, damage or loss, if known;
and

f. The amount claimed as of the date of presentation of
the claim, including the estimated amount of any
prospective injury, damage, or loss, insofar as it may be
known at the time of the presentation of the claim,
together with the basis of computation of the amount
claimed.

N.J.S.A. 59:8-4.

[8]  Section 59:8-9, in turn, provides that "[a] claimant who
fails to file notice of his claim within 90 days . . . may, in
the discretion of a judge of the Superior Court, be permitted to
file such notice at any time within one year after the accrual of
his claim provided that the public entity or the public employee
has not been substantially prejudiced thereby."  N.J.S.A. 59:8-9.
As to those claims which the Court determines are untimely, see
infra, Plaintiff made no request for permission to file a late
notice of claim within the one-year period set forth in section

11

59:8-8.

As to Plaintiff's common law false imprisonment, invasion of privacy, and false light claims, the Court agrees with Defendants that these claims accrued upon Plaintiff's arrest and upon the publication of the allegedly offensive public statements that the Individual Defendants made shortly thereafter.  See Bauer v. Borough of Cliffside Park, 225 N.J. Super. 38, 47 (App. Div. 1988) (unlike malicious prosecution claim, false imprisonment claims begin to accrue at the time of unlawful detention); Glenn v. Scott Paper Co., No. 92-1873, 1993 WL 431161, at *14 (D.N.J. Oct. 20, 1993) (under New Jersey law, defamation-related invasion of privacy claims begin to accrue upon publication).  These events transpired in July 2005, approximately eight months before Plaintiff filed his notice of tort claim.  The Court agrees with Defendants that, as to these claims, Plaintiff's tort claims notice was not timely filed pursuant to N.J.S.A. 59:8-8, and will accordingly grant Defendants' motion for summary judgment as to the claims asserted in Counts XI, XII, and XIV of the Complaint.

With regard to Plaintiff's state law claims for malicious prosecution, malicious abuse of process, and respondeat superior liability,[9] however, the Court finds that Plaintiff's March 9,

N.J.S.A. 59:8-9.

[9]  While Plaintiff's negligence claim likewise may have accrued upon favorable termination of the criminal proceedings, the Court enters summary judgment as to this claim, infra, and

12

2006 notice of tort claim was both timely filed and sufficient to put Defendants on notice of Plaintiff's claims.  First, with regard to the timeliness of these claims, Plaintiff's malicious prosecution and abuse of process claims did not begin to accrue until the prosecution against him terminated in his favor on December 12, 2005, see, e.g., Epstein v. State, 311 N.J. Super. 350, 354-55 (App. Div. 1998), making Plaintiff's March 9, 2006 notice timely under N.J.S.A. 59:8-8.

The Court further finds that the contents of Plaintiff's notice of tort claim complied with N.J.S.A. 59:8-4 and were sufficient to put Defendants on notice of the nature of Plaintiff's claims.  Contrary to Defendants' characterization of the tort claims notice as being limited to Plaintiff's request for back pay, the notice describes the indictment of Plaintiff and its dismissal, states that this false "indictment received statewide and regional media coverage and has caused the claimant embarrassment and damaged his reputation," and further explains that Plaintiff experienced "pain, suffering and humiliation," as well as permanent "[l]oss of [e]steem."  (Defs.' Br. Ex. 8 at 1-2.)  Such allegations manifestly are not, as Defendants suggest, confined to an assertion of Plaintiff's right to back pay.  To the contrary, they describe the "occurrence or transaction which

---

does not address the timeliness question as to this claim in detail.

gave rise to the claim asserted," provide a "general description
of the injury, damage or loss incurred," and list the names of
the allegedly responsible public entity and those individuals
then known to Plaintiff, as the Tort Claims Act requires.
N.J.S.A. 59:8-4.  To the extent that Defendants suggest that
Plaintiff should have provided additional categories of
information in his tort claim notice, such a position is contrary
to New Jersey law.  See Newberry, 319 N.J. Super. at 689 ("we . .
. read N.J.S.A. 59:8-4 as a legislative determination that the
information it requires constitutes an adequate, even if minimal,
fulfillment of the purposes of notice").

     In summary, the Court finds that Plaintiff filed a timely
tort claims notice of the claims asserted in Counts V, VI, X, and
XV, and will deny Defendants' motion for summary judgment as to
these claims.  Plaintiff failed, however, to file a timely notice
of tort claim for the claims asserted in Counts XI, XII, and XIV,
and the Court will accordingly grant Defendants' motion for
summary judgment as to those claims.

          2.   Tort Claims Act Immunity – Individual Defendants

     The Individual Defendants invoke multiple provisions of the
Tort Claims Act in arguing that they are entitled to immunity
from suit as to all of Plaintiff's state law claims.  For the
following reasons, the Court will grant the motion for summary
judgment as to Plaintiff's negligence claim against the

Individual Defendants, but will deny the Individual Defendants'
motion for summary judgment as to Plaintiff's state law malicious
prosecution and abuse of process claims.

"The TCA was enacted with the purpose of limiting a public
entity's or a public employee's liability in certain situations."
Davis v. Township of Paulsboro, 371 F. Supp. 2d 611, 617 (D.N.J.
2005).   Among those situations, as Defendants note, are instances
in which a public employee "acts in good faith in the execution
or enforcement of any law," N.J.S.A. 59:3-3, or "institut[es] or
prosecut[es] any judicial or administrative proceeding within the
scope of his employment."   N.J.S.A. 59:3-8.   As Plaintiff argues,
however, both of these immunity provisions are subject to the
exception contained in N.J.S.A. 59:3-14, which provides that
"[n]othing in this act shall exonerate a public employee from
liability if it is established that his conduct was outside the
scope of his employment or constituted a crime, actual fraud,
actual malice or willful misconduct."   Plaintiff's malicious
prosecution and malicious abuse of process claims are premised
upon the Individual Defendants' "actual malice or willful
misconduct," id., and the Individual Defendants may be held
liable to Plaintiff for these claims.[10]

As to Count XIII of the Complaint, however, in which

---

[10]   The Court's determination herein is without prejudice to
Defendants' right to challenge the sufficiency of Plaintiff's
proofs after the parties have conducted discovery.

Plaintiff alleges that the Individual Defendants were merely negligent in arresting and prosecuting him, the Court agrees with the Individual Defendants that they are entitled to immunity under section 59:3-3's good faith provision.  The Tort Claims Act's "actual malice" exception would not bar the Individual Defendants' assertion of section 59:3-3 immunity if they were merely negligent in initiating the proceedings alleged in the Complaint.  The Court will thus grant the Individual Defendants' motion to for summary judgment as to Plaintiff's negligence claim.

        3.   <u>Tort Claims Act Immunity – State Defendants</u>

As to those claims that are saved by section 59:3-14's "actual malice" exception for the Individual Defendants – Plaintiff's malicious prosecution and malicious abuse of process claims – the State and the OPS argue that they are immune from suit.  The Court agrees.  Under N.J.S.A. 59:2-10, "[a] public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct."  The Court recognized, <u>supra</u>, that Plaintiff's malicious prosecution and malicious abuse of process claims are premised upon allegations that the Individual Defendants' conduct was willful and malicious.  The Court will accordingly grant the State's and the OPS's motion for summary

judgment as to the claims asserted against these Defendants[11] in Counts V, VI, and X, which are all premised upon the Individual Defendants' malicious conduct.[12]

    4.  <u>Tort Claims Act Immunity – Verbal Threshold</u>

Finally, the Individual Defendants invoke N.J.S.A. 59:9-2(d), known as the Tort Claims Act's "verbal threshold," in arguing that Plaintiff's claim for damages arising out of the emotional injuries he suffered as a result of the allegedly malicious prosecution must be dismissed.  For the following reasons, the Court disagrees, and will deny their motion for summary judgment as to Plaintiff's claim for emotional damages.

---

[11]  To the extent that these claims are asserted against the Individual Defendants in their official capacities, the Court will likewise grant Defendants' motion for summary judgment. <u>See Will</u>, 491 U.S. at 71 ("a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office").

[12]  Moreover, because under the Tort Claims Act "[a] public entity is not liable for an injury resulting from an act or omission of a public employee where the public employee is not liable," N.J.S.A. 59:2-2(b), and because the Individual Defendants are immune from Plaintiff's negligence claim, the Court will likewise dismiss Count XIII against the State and the OPS. <u>See</u> Comment to N.J.S.A. 59:2-2(b) ("Subsection (b) is intended to reduce the complexity of this act by providing that generally, entity liability tracks employee liability."). Additionally, summary judgment will be entered as to Count XV of the Complaint, which simply asserts that the State and the OPS are responsible for the actions of their employees.  The preceding discussion makes clear that under the Tort Claims Act, the State and the OPS are not, in fact, liable for the conduct alleged in Counts V, VI, X, and XIII of the Complaint, and the Court has already explained, <u>supra</u>, that these Defendants are immune from Plaintiff's section 1983 and section 1985 claims.

Section 59:9-2(d) provides:

> No damages shall be awarded against a public entity or
> public employee for pain and suffering resulting from any
> injury; provided, however, that this limitation on the
> recovery of damages for pain and suffering shall not
> apply in cases of permanent loss of a bodily function,
> permanent disfigurement or dismemberment where the
> medical treatment expenses are in excess of $3,600.00.

N.J.S.A. 59:9-2(d).  This Court recently explained the

relationship between the Tort Claims Act's verbal threshold

requirement and its actual malice exception in Ward v. Barnes:

> [The verbal threshold] must be read in concert with N.J.
> Stat. Ann. § 59:3-14(b), which provides that the Act does
> not preclude a plaintiff from seeking "the full measure
> of recovery" against a public employee that would be
> available against someone in the private sector if the
> public employee defendant acted "outside the scope of his
> employment or [his conduct] constituted a crime, actual
> fraud, actual malice or willful misconduct." See Kelly
> v. County of Monmouth, 380 N.J. Super. 552, 562 (App.
> Div. 2005) ("in circumstances in which the public
> employee acts willfully or beyond the scope of his
> employment, the verbal threshold must not be applied.
> This conclusion is compelled by the very terms of the
> Tort Claims Act.")
>
> The Tort Claims Act treats public employees differently
> than it treats public entities. "Generally, immunity for
> public entities is the rule and liability is the
> exception.  In contrast, immunity of a public employee
> under the TCA is the exception." Fleuhr v. City of Cape
> May, 159 N.J. 532, 539 (1999) (citations omitted).
> Insofar as a provision of the Act explicitly places the
> employee's alleged intentional conduct in this case
> outside the scope of public employment, the provisions
> available to protect him in his role as a public employee
> do not apply.

Ward v. Barnes, 545 F. Supp. 2d 400, 417-18 (D.N.J. 2008)

(footnotes omitted).  If Plaintiff proves that the Individual

Defendants acted outside the scope of their employment or with

18

actual malice or willful misconduct, as he alleges, then he will be entitled to seek pain and suffering damages without regard to the restrictions in N.J.S.A. 59:9-2(d).  The Individual Defendants' motion for summary judgment as to Plaintiff's entitlement to seek pain and suffering damages will accordingly be denied.

> 5.   <u>Summary of Tort Claims Act Holdings</u>

As the preceding discussion makes clear, the Court will grant Defendants' motion for summary judgment as to the claims asserted in Counts XI, XII, and XIV of the Complaint.  With regard to the State and the OPS, the Court will also grant Defendants' motion for summary judgment as to the claims asserted in Counts V, VI, X, XIII, and XV.[13]  With regard to the Individual Defendants, the Court will grant Defendants' motion for summary judgment as to the claim asserted in Count XIII.  Of Plaintiff's state law claims, then, the Tort Claims Act requires that summary judgment be entered as to all of Plaintiff's state law claims save for the malicious prosecution and malicious abuse of process claims asserted against the Individual Defendants.

---

[13]   In light of the Court's determination, <u>supra</u>, that the State and the OPS are immune from Plaintiff's section 1983 and section 1985 claims, and the entry of summary judgment as to all of Plaintiff's state law claims against the State and the OPS, no claims against these entities remain in this case.  The Court will accordingly direct the Clerk of the Court to dismiss these parties from this action.

D.   **Malicious Prosecution Claims**

Defendants advance three arguments regarding the merits of Plaintiff's malicious prosecution claims.  First, they argue that they are entitled to summary judgment as to Plaintiff's section 1983 malicious prosecution claim because Plaintiff did not suffer a deprivation of liberty consistent with the Fourth Amendment's concept of a seizure as a result of the proceedings.  Second, they argue that Plaintiff cannot establish that the Individual Defendants' conduct was the cause of the malicious prosecution. Finally, they argue that the Individual Defendants had probable cause to arrest and initiate proceedings against Plaintiff, making Plaintiff's malicious prosecution claims unsustainable. For the following reasons, the Court agrees with the first of these arguments and grants Defendants' motion for summary judgment as to Plaintiff's section 1983 malicious prosecution claim, but denies Defendants' motion for summary judgment as to Plaintiff's state law malicious prosecution claims.

1.   Section 1983 Malicious Prosecution Claim

To state a claim for malicious prosecution under section 1983, a plaintiff must establish that:

> (1) the defendant initiated a criminal proceeding; (2)
> the criminal proceeding ended in his favor; (3) the
> defendant initiated the proceeding without probable
> cause; (4) the defendant acted maliciously or for a
> purpose other than bringing the plaintiff to justice; and
> (5) the plaintiff suffered deprivation of liberty
> consistent with the concept of seizure as a consequence
> of a legal proceeding.

Johnson v. Knorr, 477 F.3d 75, 81-82 (3d Cir. 2007) (citation omitted).  The fifth of these elements, unique to malicious prosecution claims brought pursuant to section 1983, stems from the Supreme Court's holding in Albright v. Oliver, 510 U.S. 266 (1994), that a plaintiff asserting a section 1983 malicious prosecution claim must allege a violation of an explicit constitutional text, "not the more generalized notion of substantive due process."  510 U.S. at 273 (citations omitted).  As the Court of Appeals explained in Gallo v. City of Philadelphia, 161 F.3d 217 (3d Cir. 1998):

> By stating that "the accused is not entitled to judicial oversight or review of the decision to prosecute," Albright implies that prosecution without probable cause is not, in and of itself, a constitutional tort.  510 U.S. at 274 (internal quotations omitted).  Instead, the constitutional violation is the deprivation of liberty accompanying the prosecution.  Thus, as the Court of Appeals for the Second Circuit stated in a post-Albright decision, a plaintiff asserting a malicious prosecution claim must show "some deprivation of liberty consistent with the concept of 'seizure.'"  Singer v. Fulton County Sheriff, 63 F.3d 110, 116 (2d Cir. 1995).

161 F.3d at 222 (footnote omitted); see also Knorr, 477 F.3d at 82.

Plaintiff has not shown that, as a result of the prosecution at issue in this case, he suffered a "deprivation of liberty consistent with the concept of 'seizure.'"  Gallo, 161 F.3d at 222 (citation omitted).  In Gallo, the court recognized that the plaintiff's liberty had been restricted in numerous ways as a result of the prosecution:

21

> he had to post a $10,000 bond, he had to attend all court
> hearings including his trial and arraignment, he was
> required to contact Pretrial Services on a weekly basis,
> and he was prohibited from traveling outside New Jersey
> and Pennsylvania.  Although it is a close question, we
> agree with Gallo that these restrictions amounted to a
> seizure.

Id.  Apart from having to attend hearings, Plaintiff encountered

none of the restrictions on liberty identified in Gallo, or any

comparable limitations; see also DiBella v. Borough of Beachwood,

407 F.3d 599, 603 (3d Cir. 2005) (attendance at hearings and

trial alone does not amount to Fourth Amendment seizure).[14]  If

Gallo presented a "close question," there can be no question in

this case that Plaintiff has failed to allege a deprivation

consistent with the Fourth Amendment concept of a "seizure," and

that Defendants are entitled to summary judgment as to his

section 1983 malicious prosecution claim.[15]

### 2.  State Law Malicious Prosecution Claims

The Court will deny Defendants' motion for summary judgment

as to Plaintiff's state law malicious prosecution claims.  To

prevail on a malicious prosecution claim under New Jersey law, a

---

[14]  Plaintiff's suggestion that this Court disregard the
holding of Albright and adopt a position that "no authority has
recognized" on account of the "exceptional" circumstances of this
case, (Pl.'s Opp'n Br. at 18-19), is singularly unconvincing.

[15]  This reasoning likewise requires that Defendants' motion
for summary judgment as to Plaintiff's section 1983 malicious
abuse of process claim be granted.  See, e.g., Smart v. Board of
Trustees of University of Illinois, 34 F.3d 432, 434 (7th Cir.
1994) (recognizing that Albright's holding extends to abuse of
process claims brought pursuant to section 1983).

plaintiff must prove "(1) that the criminal action was instituted by the defendant against the plaintiff, (2) that it was actuated by malice, (3) that there was an absence of probable cause for the proceeding, and (4) that it was terminated favorably to the plaintiff." Epperson v. Wal-Mart Stores, Inc., 373 N.J. Super. 522, 530 (App. Div. 2004) (citation omitted). In addition, in order to pursue a claim for malicious prosecution (as opposed to false arrest) against an arresting officer, a plaintiff must overcome the presumption that "the chain of causation between a police officer's unlawful arrest and a subsequent conviction and incarceration is broken by the intervening exercise of independent judgment [of the prosecutor]." Freeman v. State, 347 N.J. Super. 11, 25 (App. Div. 2002) (quoting Townes v. City of New York, 176 F.3d 138, 147 (2d Cir. 1999)). Defendants argue that Plaintiff cannot establish the causation or probable cause elements of a malicious prosecution claim. At this stage of the litigation, the Court disagrees and will deny Defendants' motion for summary judgment as to Plaintiff's state law malicious prosecution claims.

First, as to the question of causation, while Defendants are correct that there exists a presumption that the independent judgment of the prosecutor precludes a plaintiff from proving that an arresting officer was the cause of an allegedly malicious prosecution, that presumption may be rebutted upon a showing

"that the investigating officers made material omissions or gave false information to the prosecutor." Borunda v. Richmond, 885 F.2d 1384, 1390 (9th Cir. 1988); see also Freeman, 347 N.J. Super. at 25 (the aforementioned presumption attaches unless the plaintiff adduces "evidence that the police officer misled or pressured the official who could be expected to exercise independent judgment") (citation omitted); Townes, 176 F.3d at 147 (same).  At this stage of the litigation, before discovery has commenced, Plaintiff's allegation that Defendant Pennypacker deliberately falsified and concealed evidence with the knowledge and consent of three other Individual Defendants is sufficient to permit his malicious prosecution claims to proceed.  (Compl. ¶ 44.)

Defendants' argument that the Individual Defendants had probable cause to arrest and initiate the proceedings against Plaintiff is equally unavailing.  As the Court of Appeals has explained, "[p]robable cause means facts and circumstances that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Camiolo v. State Farm Fire and Cas. Co., 334 F.3d 345, 363 (3d Cir. 2003) (internal quotations and citations omitted).  In other words, "[s]o long as the totality of the circumstances, viewed in a common sense manner, reveals a probability or

substantial chance of criminal activity on the suspect's part, probable cause exists." <u>United States v. Mounts</u>, 248 F.3d 712, 715 (7th Cir. 2001) (citation omitted).  It is well-established that the question of probable cause in civil claims for false arrest and malicious prosecution is one for the jury.  <u>See</u> <u>Montgomery v. De Simone</u>, 159 F.3d 120, 124 (3d Cir. 1998).

The Court certainly cannot, at this stage of the litigation, conclude that the Individual Defendants had probable cause or arguable probable cause[16] to arrest or initiate proceedings against Plaintiff.  Defendants do not appear to dispute the fact that Plaintiff in this case applied for a credit card using a legitimate business tax identification number, not an illegally obtained Social Security Number.  Moreover, it now seems apparent that Plaintiff never, in fact, "obtain[ed] the personal identifying information of . . . persons known to the grand jurors as L.G. and/or T.M., in order to assume the identity of

---

[16]  In their brief, the Individual Defendants argue that they had a reasonable belief as to the existence of probable cause, even if probable cause did not exist.  The Court assumes that by this language, Defendants intended to invoke the "arguable probable cause" standard that applies when officers raise a qualified immunity defense to a malicious prosecution or false arrest claim.  <u>See</u> <u>Walczyk v. Rio</u>, 496 F.3d 139, 163 (2d Cir. 2007) ("Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.") (internal quotations and citations omitted).  As the discussion herein makes clear, summary judgment is not called for here, even under the more lenient arguable probable cause standard.

L.G. and/or T.M., or represent himself as L.G. and/or T.M.,
without the authorization of L.G. and T.M.," (Defs.' Br. Ex. 2 at
4), and Defendants have so far adduced no evidence whatsoever
from which the Court might conclude that it was "objectively
reasonable for [Defendants] to believe that probable cause [that
Plaintiff did obtain such personal identifying information]
existed." Walczyk, 496 F.3d at 163 (citation omitted).

In the complete absence of such evidence, and in light of
the fact that the question of probable cause is usually one for
the jury, Montgomery, 159 F.3d at 124, the Court will deny
Defendants' motion for summary judgment as to Plaintiff's state
law malicious prosecution claims.[17]

### E.   Common Law Malicious Abuse of Process Claim

Defendants move for summary judgment as to Plaintiff's
common law malicious abuse of process claim, arguing that
Plaintiff failed to allege in his Complaint that Defendants were
motivated by an ulterior motive, as the tort requires.  The Court
disagrees, and will deny Defendants' motion for summary judgment

---

[17]  In light of the Court's conclusion that summary judgment
as to the question of probable cause or arguable probable cause
cannot be entered upon this record, the Court will also deny the
Individual Defendants' motion for summary judgment as to
Plaintiff's section 1983 false arrest claim.  Defendants'
arguments as to this claim focus exclusively upon their position
that probable cause to arrest Plaintiff existed in this case, a
position the Court found to be subject to reasonable dispute in
the absence of Defendants' providing a factual basis for their
beliefs, supra.

as to this claim.  As the parties recognize, in order to state a claim for malicious abuse of process under New Jersey law, a plaintiff must allege "an improper motive or a perversion of the judicial process," Caggiano v. Fontoura, 354 N.J. Super. 111, 134 (App. Div. 2002), such as the use of process "as a means to coerce or oppress the plaintiff." Tedards v. Auty, 232 N.J. Super. 541, 550 (App. Div. 1989).  Construing Plaintiff's pleading liberally, he has alleged that Defendants concealed exculpatory evidence in order to retaliate against Plaintiff. (Compl. ¶ 53.)  Retaliation is certainly an "improper motive," Caggiano, 354 N.J. Super. at 134, and the Court thus finds that Plaintiff's allegation is sufficient to state a claim. Defendants' motion for summary judgment as to Count X of the Complaint will be denied.

**F.   Section 1983 Defamation Claim**

Defendants argue, and the Court agrees, that they are entitled to summary judgment as to Plaintiff's section 1983 defamation claim.  It is by now well-settled that "reputation alone is not an interest protected by the Due Process Clause," and that "defamation is actionable under 42 U.S.C. § 1983 only if it occurs in the course of or is accompanied by a change or extinguishment of a right or status guaranteed by state law or the Constitution." Clark v. Township of Falls, 890 F.2d 611, 619 (3d Cir. 1989) (citing Paul v. Davis, 424 U.S. 693, 701-12

27

(1976)).

Plaintiff's defamation claim focuses on the alleged deprivation of his "liberty interest in his good name, reputation, honor and integrity," (Compl. ¶ 18), which interests are not protected by the Due Process Clause.  <u>Clark</u>, 890 F.2d at 619.  Moreover, to the extent that Plaintiff seeks to rely upon his suspension from employment as a deprivation sufficient to support his defamation claim, such an approach is equally unsustainable:

> [U]nder <u>Paul v. Davis</u>, 424 U.S. 693 (1976), government acts defaming an individual implicate a liberty interest only where the individual suffers a related alteration of his legal status or deprivation of a right recognized under state law.  <u>See</u> <u>id.</u> at 710-12.  [Plaintiff] suffered no such alteration.  He was reinstated with back pay . . . , and his due process claim thus fails the <u>Paul</u> "reputation plus" test.  <u>See</u> <u>Neu v. Corcoran</u>, 869 F.2d 662, 667 (2d Cir.), <u>cert. denied</u>, 493 U.S. 816 (1989); <u>see also</u> <u>Sparks v. City of Atlanta</u>, 496 F. Supp. 770, 774 (N.D. Ga. 1980) ("stigma" suffered by police officer whose suspension was rescinded does not give rise to due process liberty interest).

<u>Dobosz v. Walsh</u>, 892 F.2d 1135, 1140-41 (2d Cir. 1989).

Because Plaintiff's defamation claim fails to allege that Defendants' allegedly defamatory conduct deprived Plaintiff of a liberty interest protected by the Due Process Clause, the Court will grant Defendants' motion for summary judgment as to the claim asserted in Count II of the Complaint.

**G.   Defendants Hurley's and Koshland's Personal Involvement**

Defendants move for summary judgment as to Plaintiff's

28

section 1983 claims asserted against Defendants Hurley and Koshland, arguing that Plaintiff has failed to allege that these Defendants were personally involved in the allegedly wrongful conduct at issue in this dispute.  For the following reasons, the Court disagrees, and will deny Defendants Hurley's and Koshland's motion for summary judgment as to Plaintiff's section 1983 claims.

It is well-established that "[s]ection 1983 will not support a claim based on a respondeat superior theory of liability." Polk County v. Dodson, 454 U.S. 312, 325 (1981); see also Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  For this reason, as the Court of Appeals stated in Dellarciprete, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs," which "can be shown through allegations of personal direction or of actual knowledge and acquiescence."  845 F.2d at 1207.

While Plaintiff labeled his section 1983 claim against Defendants Hurley and Koshland as being premised upon "supervisory liability," (Compl. Count VIII), he has alleged sufficient facts to suggest that these Defendants were personally involved in the allegedly wrongful conduct, and have not been included as Defendants solely on account of their status as supervisors of alleged tortfeasors.  In particular, the Complaint alleges that Defendant Pennypacker deliberately falsified and/or

29

concealed evidence that Plaintiff was applying for a credit card using a legitimate business tax identification number, not a stolen Social Security Number, with the knowledge and consent of Defendants Hurley and Koshland.  (Compl. ¶ 44.)  If Defendants Hurley and Koshland knew of, and acquiesced to, the fact that Defendant Pennypacker allegedly concealed evidence in order to be able to falsely arrest and prosecute Plaintiff, then Plaintiff's claims against them would not be premised upon a <u>respondeat superior</u> theory of liability.  <u>See</u> <u>Dellarciprete</u>, 845 F.2d at 1207.  Defendants Hurley's and Koshland's motion for summary judgment as to Plaintiff's section 1983 claims will accordingly be denied.[18]

---

[18]  For similar reasons, Defendants' motion for summary judgment as to Plaintiff's section 1983 conspiracy claim will be denied.  Plaintiff has adequately alleged that Defendants conspired to violate his rights by agreeing to arrest and prosecute him without probable cause, and Plaintiff's allegation that Defendants Hurley, Koshland, and Rudderow knew of and acquiesced to Defendant Pennypacker's concealment of exonerating evidence lends plausibility to Plaintiff's conspiracy claim.  The Court will thus deny Defendants' motion for summary judgment as to Plaintiff's section 1983 conspiracy claim.
    However, the Court will grant Defendants' motion for summary judgment as to Plaintiff's claim for civil rights conspiracy pursuant to section 1985(3).  "To establish a claim under § 1985(3), the record must support a finding of the existence of a conspiracy motivated by race or class based animus, among other things."  <u>Estate of Oliva v. New Jersey</u>, --- F. Supp. 2d ----, 2008 WL 4394171, at *23 (D.N.J. Sept. 30, 2008) (citing <u>Lake v. Arnold</u>, 112 F.3d 682, 685 (3d Cir. 1997)).  There are neither allegations nor evidence of such invidious discrimination in this case, and summary judgment as to Plaintiff's section 1985 conspiracy claim will accordingly be granted.

**H.    Claim and Issue Preclusion**

Finally, the Court addresses Defendants' argument that, because in his prior lawsuit against the State for back pay, Plaintiff sought "an award of counsel fees, pursuant to N.J.S.A. 53:1-30, as a result of having to defend against [the] indictment," Stolinski v. Div. of State Police, No. 2412-07T3, 2008 WL 4703013, at *1 (App. Div. Oct. 28, 2008),[19] the doctrines of res judicata and collateral estoppel bar Plaintiff from being awarded the counsel fees he incurred in defending against the indictment if he prevails against the Individual Defendants in this action.[20]  For the following reasons, the Court will deny this aspect of Defendants' motion.

1.    Res Judicata and the Entire Controversy Doctrine

As the Court of Appeals has noted, the doctrine of res judicata, or claim preclusion, "protects litigants from the burden of relitigating an identical issue with the same party or his privy and promotes judicial economy by preventing needless litigation."  Post v. Hartford Ins. Co., 501 F.3d 154, 169 (3d

---

[19]  As the Court explained, supra, the Appellate Division held that N.J.S.A. 53:1-30 did not authorize Plaintiff to receive money spent defending against the indictment from the state because "the allegations of the indictment were not 'directly related to [his] lawful exercise of police powers in the furtherance of official duties.'"  Stolinski, 2008 WL 4703013, at *1 (quoting N.J.S.A. 53:1-30).

[20]  Plaintiff concedes that the State has paid his back pay and that he is not entitled to an award of back pay in this action.

Cir. 2007) (quoting Parklane Hosiery Co. v. Shore, 439 U.S. 322, 327 (1979)) (internal quotations omitted, emphasis added). In applying the doctrine of res judicata, "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Walker v. Horn, 385 F.3d 321, 337 (3d Cir. 2004) (quoting Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984)); see also Paramount Aviation Corp. v. Agusta, 178 F.3d 132, 135 (3d Cir. 1999) ("federal courts should apply the general rule that the preclusive effect of a judgment is determined by the preclusion law of the issuing court").

The New Jersey Supreme Court has noted that New Jersey's "entire controversy doctrine is essentially res judicata by another name," and that the purpose of both doctrines is to require litigants "to bring all possible claims in one proceeding." McNeil v. Legislative Apportionment Com'n of State, 177 N.J. 364, 395 (2003) (citation omitted).[21] Under New Jersey law, claim preclusion will prevent a litigant from relitigating disputes that had been resolved in an earlier proceeding if three requirements are met:

---

[21] While the entire controversy doctrine once extended to mandatory party joinder, in 1998, "[f]acing mounting criticism for the untenable outcomes often generated . . . [under such a rule], the New Jersey Supreme Court . . . authorized the elimination of mandatory party joinder under the entire controversy doctrine." Center For Professional Advancement v. Mazzie, 347 F. Supp. 2d 150, 155-56 (D.N.J. 2004).

> (1) the judgment in the prior action must be valid,
> final, and on the merits; (2) the parties in the later
> action must be identical to or in privity with those in
> the prior action; and (3) the claim in the later action
> must grow out of the same transaction or occurrence as
> the claim in the earlier one.

Watkins v. Resorts Int'l Hotel & Casino, Inc., 124 N.J. 398, 412

(1991) (citations omitted, emphasis added).

Irrespective of whether the doctrine of res judicata would

have barred Plaintiff from including counsel fees among his

damages had his claims against the State survived Defendants'

motion, it is clear that neither the doctrine of res judicata,

nor the entire controversy doctrine, prevents Plaintiff from

seeking such damages against the Individual Defendants, who were

not parties to Plaintiff's original lawsuit. See Post, 501 F.3d

at 169; Watkins, 124 N.J. at 412. Nor is there any suggestion

that the Individual Defendants are in privity with the State

solely by virtue of the fact that they are employed by the State.

See Collins v. E.I. DuPont de Nemours & Co., 34 F.3d 172, 176

(3rd Cir. 1994) (explaining that "[a] relationship is usually

considered 'close enough' [for privity purposes] only when the

party is a virtual representative of the non-party, or when the

non-party actually controls the litigation"); Huertas v. City of

Philadelphia, 188 Fed. Appx. 136, 137 (3d Cir. 2006) (noting that

courts "have declined to assume that privity exists between a

municipality and its . . . employees, Headley v. Bacon, 828 F.2d

1272, 1276-1280 (8th Cir. 1987), especially where, as here, the

added defendants are sued in both their personal and official capacities.  See Conner v. Reinhard, 847 F.2d 384 (7th Cir. 1988).”); State v. Brown, 394 N.J. Super. 492, 500 (App. Div. 2007).  The Court accordingly rejects Defendants’ argument that the doctrine of res judicata precludes Plaintiff from seeking damages against the Individual Defendants for the costs he expended in defending against the indictment.

> 2.    Collateral Estoppel

Unlike the doctrine of res judicata, which bars the relitigation of certain matters between the same parties, “[u]nder the modern doctrine of non-mutual issue preclusion, . . . a litigant may also be estopped from advancing a position that he or she has presented and lost in a prior proceeding against a different adversary.”  Peloro v. United States, 488 F.3d 163, 175 (3d Cir. 2007) (citations omitted).  However, whereas res judicata applies broadly to claims that grow out of the same transaction as the claims in the earlier action, collateral estoppel applies only where “the matter raised in the second suit is identical in all respects to that decided in the first proceeding.”  Enica v. Principi, 544 F.3d 328, 337 (1st Cir. 2008) (quoting C.I.R. v. Sunnen, 333 U.S. 591, 599-600 (1948)) (emphasis added).

As the Appellate Division made clear in Stolinski v. Division of State Police, the lone issue in that matter was

34

whether the State was obligated, under N.J.S.A. 53:1-30, to reimburse Mr. Stolinski for the costs he incurred in defending himself against the indictment.[22]  Stolinski, 2008 WL 4703013, at *1.  The Appellate Division answered that question in the negative, concluding that "N.J.S.A. 53:1-30 does not provide support for Stolinski's claim because the allegations of the indictment were not 'directly related to [his] lawful exercise of police powers in the furtherance of official duties.'"  Id. (quoting N.J.S.A. 53:1-30).  The Appellate Division's decision on this matter manifestly is not "identical in all respects," Enica, 544 F.3d at 337 (citation omitted), to the question of whether the Individual Defendants may be held liable to Plaintiff for the

---

[22]  Section 53:1-30 provides:

Whenever a member or officer of the Division of State Police is a defendant in an action or legal proceeding arising out of and directly related to the lawful exercise of police powers in the furtherance of official duties, the Attorney General shall provide that member or officer with necessary means for the defense of the action or proceeding, but not for his defense in a disciplinary or criminal proceeding instituted against the member or officer.  If a disciplinary or criminal proceeding is dismissed or finally determined in favor of the member or officer, the member or officer shall be reimbursed for the reasonable expenses of his defense. Nothing in this section shall be construed to limit the Attorney General's authority under section 3 of P.L.1972, c. 48 (C.59:10A-3) to provide for the defense of a member or officer of the Division of State Police in any action or legal proceeding, if the Attorney General concludes that such representation is in the best interest of the State.

N.J.S.A. 53:1-30.

damages he incurred in defending against baseless charges.  While the issues arise out of the same transaction, the statutory question of the State's duty of reimbursement, which the Appellate Division decided in <u>Stolinski v. Division of State Police</u>, is distinct from the matters of constitutional and tort law at issue in this lawsuit.

Because the doctrines of <u>res judicata</u> and collateral estoppel do not bar Plaintiff from recovering the attorney's fees he incurred in defending against the indictment from the Individual Defendants, this aspect of Defendants' motion for summary judgment will be denied.

**IV.   CONCLUSION**

For the reasons explained above, the Court will grant in part and deny in part Defendants' motion for summary judgment. The Court will grant Defendants' motion as to all claims against the State, the OPS, and the Individual Defendants in their official capacities.  The Court likewise will enter summary judgment for Defendants as to Plaintiff's claims for malicious prosecution and malicious abuse of process pursuant to section 1983, defamation, civil rights conspiracy pursuant to section 1985, and his common law claims for invasion of privacy, false light, negligence and false imprisonment.  The sole claims remaining in this case are Plaintiff's claim for false arrest pursuant to section 1983, his section 1983 conspiracy claim, and

his state law malicious prosecution and malicious abuse of process claims, all asserted against the Individual Defendants in their individual capacities.  The accompanying Order will be entered.

_____

**December 4, 2008**                                    **_s/ Jerome B. Simandle_**
Date                                                     JEROME B. SIMANDLE
                                                         United States District Judge

37